UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS N. HARRIS,

        Plaintiff,

Case No. 1:05-CV-815

Hon. Robert J. Jonker

v.

CINDI CURTIN, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION ON REMAND**

    **I.**    **Procedural Background**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On December 19, 2006, the undersigned issued a report and recommendation which concluded that plaintiff's complaint contained both exhausted and unexhausted claims and that the complaint be dismissed pursuant to the total exhaustion rule announced in *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005). Shortly thereafter, the Supreme Court issued its decision in *Jones v. Bock*, -- U.S. --, 127 S. Ct. 910 (2007), which overruled substantial portions of Sixth Circuit's jurisprudence regarding administrative exhaustion of prisoner grievances, including the "total exhaustion" rule expressed in *Jones Bey*.

In light of the Supreme Court's sweeping opinion, the district judge vacated the December 19, 2006 report and recommendation and remanded the matter to the undersigned for reconsideration under the standard set forth by the Supreme Court in *Jones v. Bock*. *See* Order (March 7, 2007). Since the issuance of the original report and recommendation, plaintiff has filed motions for a preliminary injunction (docket no. 32), a temporary restraining order (docket no. 32)

and for partial summary judgment (docket no. 35). For their part, defendants have abandoned their original motion to dismiss (docket no. 25), having filed a motion for summary judgment (docket no. 52). These matters are now before the court.

## II. Plaintiff's claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff's complaint is difficult to decipher. He did not utilize the form complaint provided to inmates nor did he set forth his claims in separate counts or numbered paragraphs as required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a), 10(b). Nevertheless, the court has a duty to read this pro se plaintiff's complaint indulgently. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F.2d 1220, 1223-24 (6th Cir. 1987). Plaintiff's complaint names 12 defendants: Cindi Curtin (deputy warden); David. Pratt (assistant deputy warden); Larry Weaver (case manager); Anita Young (health care unit manager); James MacMeekin (Regional I prison administrator); Terry Malloy (Regional I health administrator); Christopher Crysler (security classification coordinator); Willie O. Smith (warden); Fred Hogle (shift commander); Betty Kemp (nurse); Eric Conran (corrections officer); and Mark Gregory (corrections officer). Plaintiff seeks

relief based upon issues raised in five grievances filed at two different correctional facilities, which allege that defendants violated his rights under the Fifth, Eighth and Fourteenth Amendments.

Plaintiff's claims as follows:

### A. Post-surgery transfer (Grievance ECF 0504-0721-28E).[1]

Plaintiff underwent surgery for a ruptured brain aneurysm on June 9, 2004. This grievance appears to allege retaliation, claiming that the Michigan Department of Corrections ("MDOC") officials sent plaintiff from a level 4 facility (Oaks Correctional Facility or ECF) to a level five facility (Ionia Maximum Correctional Facility or ICF) when he returned from the hospital on June 21, 2004, and that the new facility could not meet his medical needs. In his complaint, plaintiff alleges that defendants deliberately transferred him to ICF to be oppressed and abused. This grievance alleges an incident date of June 9, 2004.

### B. Administrative Segregation (Grievance ECF 0504-0720-28E).

This grievance claims that MDOC officials should have released him from administrative segregation. In his complaint, plaintiff alleges that defendants' actions were retaliatory, and that they transferred him to ICF to oppress, abuse, and punish him in an attempt to prevent him from reporting incidents he encountered before his brain aneurysm. This grievance also alleges an incident date of June 9, 2004.

### C. Excessive Force using chemical agents (Grievance ECF 0408-1727-12E).

This grievance appears to allege that defendants Smith and Kemp authorized MDOC staff, commanded by defendant Hogle, to utilize a chemical agent to control plaintiff and in so doing jeopardized his health and welfare. Plaintiff states that he is an asthmatic and suffered injury

---

[1] The copies of the Step I grievances are sometimes illegible.

from being sprayed with the chemical agent on August 10, 2004. Later that day, plaintiff alleged that he suffered injuries to his left hand when unnamed corrections officers carried him from the shower.

### D. Excessive Force on August 27, 2004 (Grievance ICF 0409-1772-26A).

This grievance appears to allege that on August 27, 2004, defendants Conran and Gregory placed plaintiff in restraints and pushed him to the floor, which resulted in injuries to his neck and back. Plaintiff alleges that defendants acted deliberately, because they were aware of his brain aneurysm rupture surgery in June 2004.

### E. Excessive force and improper transfer claim arising on September 18, 2004 (Grievance ICF 0409-1891-22A).

This grievance alleges that defendant Warden Smith improperly had plaintiff transferred to ICF and then placed plaintiff's life in danger by ordering an MDOC officer to murder plaintiff in retaliation for filing grievances. In his complaint, plaintiff alleges that he suffered a scalp hematoma, internal bleeding and respiratory failure on September 18, 2004 and that defendant Smith knew that plaintiff should have been placed in a medical recovery facility rather being transferred to ICF. Plaintiff's complaint omits his grievance the claim that defendant that defendant Smith transferred him to ICF to be murdered in retaliation for filing grievances.

### F. Damages

Plaintiff seeks $200,000 in compensatory and $200,000 punitive damages from each defendant, for a total claim of $4.8 million. He also seeks a declaratory judgment that defendants violated his Fifth, Eighth and Fourteenth Amendment rights and injunctive relief to release him from administrative segregation and place him in an appropriate facility that can meet his chronic medical needs.

### III. Exhaustion Issue

#### A. Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. Failure to exhaust is an affirmative defense under the PLRA. *Jones*, 127 S. Ct. at 921. In *Woodford v. Ngo*, -- U.S. --, 126 S. Ct. 2378 (2006), the Supreme Court stated that "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 126 S. Ct. at 2387 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court *Id.* at 2382-93; 42 U.S.C. § 1997e(a).

#### B. Plaintiff's untimely grievances

In his complaint, plaintiff states that two of his grievances, ECF 0504-0721-28E and ECF 0504-0720-28E were rejected as untimely. In their motion, defendants contend that these two rejected grievances should be dismissed as unexhausted. In his response, plaintiff concedes that grievances ECF 0504-0721-28E and ECF 0504-0720-28E are unexhausted and asks the court to dismiss these claims without prejudice. Plaintiff's response at 2 (docket no. 61). Because plaintiff seeks to dismiss the claims arising from these two untimely grievances, it is unnecessary for the

court to address the exhaustion issue. Plaintiff's complaint also identifies grievance ECF 0504-0720-28E as involving the actions of defendants Curtin, Pratt, Weaver, MacMeekin and Crysler, and identifies grievance ECF 0504-0721-28E as involving the actions of defendants Young and Malloy. Plaintiff's complaint contains no other claims against defendants Curtin, Pratt, Weaver, MacMeekin, Crysler, Young and Malloy. Accordingly, it is appropriate for the court to dismiss plaintiff's claims against these seven defendants.

### C. Plaintiff's failure to name defendants

Defendants contend that plaintiff's grievance ICF 0408-1727-12E is unexhausted because plaintiff failed to name the staff involved. In his complaint, plaintiff alleges that the incident complained of in this grievance occurred on August 10, 2004, when defendants Smith, Kemp and Hogel improperly used chemical agents on him. Compl. at pp. 7-8. Plaintiff alleges that he is an asthmatic and that the use of the chemical agents placed him in danger and that he suffered injuries when he was carried by several officers after the incident. *Id.* The policy directive requires that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included." Policy Directive 03.02.130 ¶ T. Here, plaintiff's grievance does not identify the officers that allegedly carried him from the shower causing him injuries. Plaintiff has failed to properly exhaust this excessive force claim, and the court should dismiss this claim as unexhausted.

### IV. Plaintiff's motions for a temporary restraining order and preliminary injunction (docket nos. 32 and 49)

Next, plaintiff has filed two motions seeking a temporary restraining order (TRO) and preliminary injunction from this court. In his motion, plaintiff seeks an order directing defendant Malloy to "arrange for plaintiff to have Endovascular Procedure/Surgery and overall examination by the qualified neurosurgeons," an evaluation of the condition of his "Right Carotid Aneurysm

Artery, Coils and Neuroform Stent placement."  In his second motion, plaintiff seeks an overall examination of his condition by specialists.

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002). In reviewing requests for injunctive relief, the court considers (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the preliminary injunction will cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.  *See Rock & Roll Hall of Fame v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998); *McPherson v. Mich. High School Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir. 1997)(en banc).

Where a prison inmate seeks an order enjoining state prison officials, this court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438, n. 3 (6th Cir. l984).  *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. l979).  Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995), citing *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).  *See also Whitley v. Albers*, 475 U.S. 312 (1986). Correctional officials are professional experts in matters of security and discipline; as such they are better suited to make decisions about such matters than are the courts.  *Bell*, 441 U.S. at 547.  "[T]he operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Id.* at 548.

It is well established that an inmate has a cause of action under 42 U.S.C. § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires a plaintiff to "allege that the medical need is 'sufficiently serious.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001), *quoting Farmer*, 511 U.S. at 834. The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff's motion is based upon the following facts. Plaintiff had a 6-month followup for his surgery on February 9, 2005. *See* docket nos. 33, 49. At that time, a physician recommended a followup arteriogram in one year. *Id.* Plaintiff states that this "arteriogram and overall examination" was to be scheduled in February 2006 at Blodgett Hospital in Grand Rapids, but that had been delayed, apparently due to his transfer to another correctional facility, i.e., to Standish and Marqutte. *See* docket no. 33. In his motions for injunctive relief, plaintiff seeks court order directing defendant Malloy to schedule a followup examination and requests the court to effectively manage his medical treatment for the duration of his incarceration.

8

Plaintiff's motions for injunctive relief should be denied for two reasons. First, by requesting this court to indefinitely supervise his followup treatment, plaintiff's requests exceed "[t]he general function of a preliminary injunction," which "is to maintain the status quo pending determination of an action on its merits." *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965 (6th Cir. 1976).

Second, plaintiff's request also seeks relief that is not the subject of this lawsuit. Plaintiff's grievances and lawsuit involves the alleged use of excessive force in August and September 2004, and plaintiff's alleged improper transfer to ICF in June 2004. These claims are separate and distinct from plaintiff's new allegation that defendant Malloy failed to schedule a followup medical examination in February 2006. "A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997). While "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," an injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit." *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945).

Accordingly, the court should deny that plaintiff's motions for a TRO and preliminary injunction.

### V. Motions for summary judgment (docket nos. 35, 52).

Both plaintiff and defendants have moved for summary judgment in their favor. As previously discussed, plaintiff has only four claims remaining subject to the motions for summary judgment: August 10, 2004 (excessive force by use of chemical agents); August 27, 2004 (excessive

force in escorting plaintiff); September 18, 2004 (excessive force claim resulting in hospitalization); and the "improper transfer" claim directed at defendant Smith.

### A. Legal Standard

Summary judgment is appropriate under Rule 56(b) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).

"In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving parties version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, -- U.S. --, 127 S. Ct. 1774, 1776 (2007).

**B.     Excessive Force**

A convicted prisoner's claim of improper use of excessive force is to be raised exclusively under the Eighth Amendment's cruel and usual punishment clause. *See Cornwall v. Dahlberg*, 963 F.2d 912, 915-16 (6th Cir. 1992).  In analyzing a prisoner's excessive force claim, the Court must examine whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Hudson v. McMillian*, 503 U.S. 1, 6; 112 S. Ct. 995 (1992).  Courts evaluate the injury suffered, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.*, 503 U.S. at 7, quoting *Whitley  v. Albers*, 475 U.S. 312, 321 (1986).  In the context of prisons, courts must give deference to actions prison guards take to maintain prison discipline, as long as those actions are taken pursuant to a considered choice and not in bad faith or for no legitimate purpose. *Whitley*, 475 U.S. at 321-22.  Where the use of some force is required to restore order, it does not violate the Eighth Amendment unless the force used is "repugnant to the conscience of mankind" or the force is used "maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 9,10 (citations omitted).  In short, "[not every]  malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at  9.

**1.     August 10, 2004**

The critical incident report states that plaintiff received a misconduct for refusing to stop kicking his cell door and shattering his cell window. *See* critical incident report (8/10/04)

11

attached to defendants' brief as exh. 11.[2]  Defendant Warden Smith was contacted and authorized the use of chemical agents if necessary to remove plaintiff from his cell.  *Id.*  Defendant Nurse Kemp was contacted, and found no medical reason why chemical agents could not be used on plaintiff if necessary.  *Id.*  Defendant Hogle mustered a response team to plaintiff's cell, ordered him to place his arms through the food slot to allow application of restraints.  *Id.*  Plaintiff refused and an officer administered a short burst of chemical agents into his cell.  *Id.*  Plaintiff was placed in restraints and taken to the showers.  *Id.*  Some minutes later, he was lying on the shower floor and would not respond to staff.  *Id.*  Another response team placed plaintiff in handcuffs and leg irons.  *Id.*  They carried plaintiff to the medical area for evaluation, because he would not walk.  *Id.*  Plaintiff verbally abused the officers and attempted to kick them as they placed him on the treatment table.  *Id.*  Plaintiff received a medical checkup at that time and complained of a sore left wrist with slight swelling.  *Id.*  Plaintiff's vital signs were taken, which indicate that he was not in distress.  *Id.*  He was treated for a .5 cm x .5 cm cut on the ball of his right foot and returned to his cell.  *Id.*

Nurse Kemp's notes reflect a concern that the use of force to move plaintiff to another cell could be high risk "due to [plaintiff's] aneurysm."  *See* medical records (8/10/04) (docket no. 60).  The nurse examined plaintiff in the shower, at which time she found him lying on the floor, with his eyes closed.  *Id.*  While plaintiff would not respond to verbal orders, he was not in any respiratory distress.  *Id.*  A doctor ordered an x-ray of plaintiff's left wrist, but neither plaintiff nor defendants have submitted the results of the x-ray.  *Id.*

---

[2] Defendants did not file certified copies of the medical records and other MDOC records relevant to plaintiff's suit.  As a general rule, the court cannot grant a motion for summary judgment based on these uncertified papers.  *See* Fed. R. Civ. P. 56(e).  However, plaintiff's failure to object to these papers constitutes a waiver of an objection for noncompliance under Rule 56(e).  *See Johnson v. United States Postal Service*, 64 F.3d 233, 236-37 (6th Cir. 1995).

Plaintiff's version of events are set forth in a "declaration in support of plaintiff's motion for partial summary judgment" (sometimes referred to as the "declaration") (docket no. 36) and his affidavit in response to defendants' motion for summary judgment (sometimes referred to as the "affidavit") (docket no. 61). Plaintiff gives little factual information in these filings. Plaintiff states that he was injured, but does not dispute the chronology of events as set forth above. *See* plaintiff's declaration and affidavit. In these filings, plaintiff claims that because he suffers from asthma, the use of chemical agents against him is both a present and future hazard to his health. *Id.*

The use of chemical agents such as mace or tear gas does not constitute cruel and unusual punishment when reasonably necessary to subdue recalcitrant prisoners. *See Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984); *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir. 1975). In *Caldwell v. Moore*, 968 F.2d 595 (6th Cir.1992), the Sixth Circuit recognized that the use of chemical agents may be necessary to maintain discipline in prisons:

> When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force. While experts who testified on behalf of the plaintiffs suggested that rather than seek to enforce orders, it was possible to leave the inmate alone if he chooses not to obey a particular order, and wait him out, experience and common sense establish that a prison cannot be operated in such a way.

*Id.* at 602 quoting *Soto*, 744 F.2d 1260 at 1257.

In the present case, the court concludes that defendants' use of chemical agents was reasonable. The critical incident report indicates that plaintiff did not comply with the officer's orders. Nurse Kemp recognized that the use of force on plaintiff presented a high risk due to his recent aneurysm. Nevertheless, it is undisputed that the corrections officers had to gain control over the situation, i.e., plaintiff was kicking his cell door and had shattered his cell window. The record

13

reflects that the officers used the chemical agents in a good faith effort to maintain and restore discipline. *See Whitley*, 475 U.S. at 321-22. In addition, nothing in the record suggests that defendants acted maliciously or sadistically. *Hudson*, 503 U.S. at 9-10. On the contrary, defendant Hogle contacted both the Warden and Nurse Kemp before using the chemical agent. The fact that plaintiff suffers from asthma does not exempt him from the reasonable use of chemical agents, especially in light of Nurse Kemp's concern that plaintiff would be at risk if the officers used force.

Plaintiff presents no evidence that his asthma is so severe as to preclude the use of chemical agents. Defendants point out that chemical agents were previously authorized for use on plaintiff during a critical incident on July 16, 2004, when he refused to remove his arms from the cell's food slot. *See* critical incident report (7/16/04) attached to defendants' brief as exh. 16.[3] At that time, health care advised the officers to use "the least invasive risk alternative" due to plaintiff's aneurysm surgery the previous month. *Id.* This alternative involved a small amount of chemical agents and minimal force. *Id.* The officers needed to use two bursts of chemical agents to secure the cell. *Id.* Plaintiff refused a medical examination and treatment after the incident. *Id.* Furthermore, the nurse's notes indicate that plaintiff was not in respiratory distress after the officer used the short burst of chemical agent.

Accordingly, the court should grant defendants' motion for summary judgment on this claim.

**2.  August 27, 2004**

---

[3] Defendants apparently refer to the July 16, 2004 incident as the first use of chemical agents in this suit. *See* defendants' brief at 9. However, the present litigation does not involve the July 16th incident.

Next, plaintiff states that defendants Conran and Gregory used excessive force in escorting him to another cell on August 27, 2004. According to plaintiff, while defendant Conran held a chain around his lower back, Conran pushed plaintiff very hard to the floor, causing injuries to his lower back and neck. *See* docket nos. 36, 61. Then, defendants Conran and Gregory dragged him to a cell. *Id.* Plaintiff presents no medical evidence of an injury sustained during this incident.

According to both defendants Conran and Gregory, while moving plaintiff to a different cell, he stated "I'll show you, I'll sue you" and threw himself on the floor. *See* Conran Affidavit, attached to defendants' brief as exh. 12; Gregory Affidavit, attached to defendants' brief as exh. 13. After he got up, plaintiff threw himself down a second time saying, "I'm still suing." *Id.* Plaintiff's actions resulted in a major misconduct conviction for disobeying a direct order to back up to the door so that his restraints could be removed. *See* Major Misconduct Hearing Report (Sept. 8, 2004) attached to Gregory Aff. The hearing officer noted that the " [video] recording does not clearly show that prisoner was thrown or dragged into his cell as he alleged." *Id.*

Plaintiff's version of the events are blatantly contradicted by the hearing officer's findings, plaintiff's conviction of the major misconduct, the evidence presented at the major misconduct hearing, and the lack of any medical evidence to support the alleged lower back and neck injuries. *See Scott*, 127 S. Ct. at 1776. Under these circumstances, the court is not bound to adopt plaintiff's version of the events for purposes of summary judgment. *Id. See also, Reist v. Orr*, No. 95-1128, 1995 WL 592041 at *2 (6th Cir. Oct. 5, 1995) (no genuine issue of material fact in excessive force claim, where it was "plaintiff's word against a barrage of unrefuted evidence in support of defendants' motion including medical evidence, the critical incident reports . . . and all documents and evidence presented at plaintiff's major misconduct hearings"). Absent plaintiff's

declaration and affidavit, the unrefuted evidence fails to establish that defendants Conran and Gregory used excessive force.

Accordingly, in this instance the court would be justified in finding that no genuine issue of material fact existed and in granting defendants' motion for summary judgment on this claim.

### 3. September 18, 2004

A critical incident report for September 18, 2004 states that plaintiff was found unresponsive on the floor next to his bunk and sent to the hospital. *See* Critical Incident Report attached to defendants' brief as exh. 15. Nothing in this critical incident report suggests that any defendant used any force, let alone excessive force, on plaintiff. Plaintiff states no facts to support an excessive force claim, stating only that on September 18, 2004, he was air lifted to Butterworth Hospital in Grand Rapids and "suffered injuries." *See,* Plaintiff's declaration and affidavit. As previously discussed, plaintiff's complaint omits the claims in the underlying grievance ICF 0409-1891-22A that defendant Smith ordered his transfer and murder in retaliation for filing grievances. To the extent that this claim is part of the larger "improper transfer" issue, the court will address it in ¶ V. C., *infra*.

Defendants' motion for summary judgment on this claim should be granted.

### C. Improper Transfer

Finally, plaintiff appears to claim that defendant Smith violated his Fifth and Fourteenth Amendment rights by allowing his transfer from ECF to ICF, a facility that is inappropriate for his particular medical needs. *See* plaintiff's brief (docket no. 38). Plaintiff's claim is without merit.

First, a prisoner has no constitutional right to be confined in a particular institution or to enjoy a certain classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir.1986).

Second, defendant Smith had no role in placing plaintiff at ICF. *See* Smith Affidavit at ¶ 3, attached to defendants' motion as exh. 9. Plaintiff's transfer was initiated by either Central Office Classification Staff or staff at ECF. *Id.*  *See generally*, Policy Directive 05.01.140, ¶¶ B, G. Defendant Smith explained the transfer process as follows:

> 4.      The transfer process involves checks and balances, including a health care clearance and Central Office clearance. Once the prisoner is cleared for transfer to ICF, the Transfer Coordinator and the Record Office at this facility are notified that the prisoner will be transferring into this facility. I have no part in this process.
>
> 5.      While a Security Classification Screen is one item to consider when placement is determined, it is not the only item. Prisoner Harris was already in Level V Administrative Segregation when he arrived at ICF. Once here, prisoner Harris was interviewed and evaluated by the Security Classification Committee as required by policy and procedure. The committee evaluated the prisoner's prospects for release to the general population. The committee did not feel prisoner Harris could be managed in the general population and did not release him to general population during his confinement time at ICF.

*Id.* at ¶¶ 4-5.

Third, even if defendant Smith orchestrated plaintiff's transfer to ICF, a contention that has no basis in fact or law, Smith had no knowledge of matters contained in plaintiff's confidential medical records. *Id.* at ¶ 7. The record reflects that plaintiff's medical condition was evaluated by personnel at ECF prior to his transfer to ICF. *See,* Plaintiff's hospital discharge instructions (docket no. 59) and transfer assessment (docket no. 60) (both filed under seal).

Accordingly, the court should grant defendants' motion for summary judgment on this claim.

17

### V.	Recommendation

I respectfully recommend that defendants' motion to dismiss (docket no. 25) be **DENIED** as moot.

I further recommend that plaintiff's motions for a TRO and preliminary injunction (docket nos. 32 and 49) be **DENIED**.

I further recommend that defendant's motion for summary judgment (docket no. 52) be **GRANTED**, that plaintiff's motion for partial summary judgment (docket no. 35) be **DENIED**, and that plaintiff's suit be **DISMISSED**.


Dated:  December 20, 2007	/s/ Hugh W. Brenneman, Jr.
	HUGH W. BRENNEMAN, JR.
	United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).